No. 19,491.

RICHARD B. HOVIS, *Appellee*, v. THE CUDAHY REFINING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Three Grounds of Negligence Alleged—Evidence Sufficient to Sustain Either — Good against Demurrer.* In an action for personal injury, where the petition alleges negligence, first, in furnishing a tool which was not in a reasonably safe condition; second, in failing to furnish competent fellow workmen; and third, in not warning the employee of the dangers incident to the work in which he was engaged, a peremptory instruction to find for the defendant because there was no evidence to show negligence on its part is properly refused when there is evidence to establish any one of the three grounds alleged.

2. SAME—*Proper Instruction Refused—No Prejudicial Error.* A judgment will not be reversed because an instruction which might properly have been given was refused, where it does not appear that the party complaining was prejudiced thereby.

3. SAME—*Defective Tools—Question for Jury.* It is proper to submit to the jury the question of an employer's negligence in furnishing a tool not in a reasonably safe condition, under an allegation charging such negligence, where the evidence shows that pieces of steel would fly from the tool when in use by workmen, and that such pieces would not fly if the tool were kept in proper condition.

4. WORKMEN'S COMPENSATION ACT—*Constitutional.* Section 46 of chapter 218 of the Laws of 1911, giving the defenses of contributory negligence and assumption of risk to an employer who elects to come within the provisions of the act, and denying those defenses to an employer who does not elect to come within its provisions, is not unconstitutional.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed May 8, 1915. Affirmed.

*W. E. Ziegler,* of *Coffeyville, William S. Hogsett,* and *Murat Boyle,* both of Kansas City, Mo., for the appellant.

*Charles D. Ise,* and *Walter J. Ise,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is a suit for damages on account of a personal injury sustained by the plaintiff on October 7, 1912, while employed by the defendant in its plant at Coffeyville, Kan. The plaintiff secured judgment for $2999. The defendant appeals.

The petition alleges three grounds of negligence; first, in furnishing a diamond-point chisel which was not in a reasonably safe condition; second, in failing to furnish competent fellow workmen; third, in not warning plaintiff of the dangers incident to the work in which he was engaged.

The evidence tends to disclose the following facts: The plaintiff was a man thirty-four years of age. He began work for defendant April 3, 1912, seven months prior to the accident. When he first went to work, it was contemplated that he should eventually work as a compounder, but he understood that it would be some months before that position would be open, and that he would have to do general work around the plant until that time. Part of the time he did pipe fitting, dug ditches for pipes and laid the pipes, did wheeling work around the yards, etc. The plaintiff and two other workmen were cutting out a piece from the bottom of a still, when the plaintiff was injured. The still was cylindrical in shape, about fifteen feet long and seven feet in diameter, and made of sheet steel. It had a manhole in each end, large enough for a man easily to

pass through. The bottom of the still had been burned, was very hard and brittle, and leaked, which made it necessary to cut out a section of the bottom about ten feet long and four feet wide and put on a patch. The cutting was being done by means of a diamond-point chisel and an eight-pound sledge hammer. Mayfield, the head boiler maker, assigned the plaintiff, with Palmer and Biggerstaff, to this work. They began work in the still about nine o'clock in the morning of the day of the accident, and continued until four o'clock in the afternoon, when plaintiff was injured. Mayfield held the diamond-point, and Biggerstaff and plaintiff alternated in striking the head of it with the sledge hammer. From constant hammering the head of the diamond-point became battered, and bits of steel sometimes flew from it when struck by the sledge. This could have been prevented by breaking off the pieces with a small hammer when they first appeared on the head of the chisel. Bits of steel also flew from the point of cutting. There was a sharp conflict as to whether or not plaintiff knew of these bits of flying steel. The plaintiff says he did not. The defendant says he must have known, because the pieces were frequently flying from either the head or the point of the chisel. Mayfield left about two o'clock, and after this Biggerstaff held the chisel and Palmer and the plaintiff alternated at the striking. It was sultry in the still, and the workman not striking sat at either of the manholes while resting, and at the time of the accident plaintiff was sitting on a board in the still, leaning against the north side, just north of the opening at the east end, and was facing toward the south. Biggerstaff was then holding the chisel and Palmer was striking with a sledge. Biggerstaff was in a crouching position a little south of the center line of the bottom of the still. Palmer was standing west and a little north of Biggerstaff. While they were in this position a piece of steel hit the plaintiff in the eye, releasing part of its fluid, resulting

in the mutilation and disfigurement of the eyeball and in the total loss of sight in the injured eye.

(1) The defendant contends that the court should have given a peremptory instruction to find for the defendant, because there was no evidence to show negligence on its part.

In support of this contention it is argued that the evidence, both on the part of the plaintiff and the defendant, conclusively shows that the plaintiff could not possibly have been struck by a chip from the head of the chisel; that all of the evidence shows that Biggerstaff, who was holding the chisel at the time of the accident, was between the plaintiff and the head of the chisel. We do not agree with the defendant in this conclusion. The evidence does show that Biggerstaff was between the plaintiff and the chisel, but it does not show that Biggerstaff was on the line that would be followed by a piece of steel flying from the head of the chisel to the plaintiff's eye.

Another argument for a peremptory instruction is that there was no evidence to show that the fellow employees of the plaintiff were not competent, or that the accident was in any way caused by their incompetency, and that this question should not have been submitted to the jury. There was enough evidence which tended to show that Biggerstaff was inexperienced in holding the chisel, and not competent to do that work, to justify the court in submitting that question to the jury. Mr. Mayfield, the plaintiff's superior, was acquainted with Biggerstaff's qualifications and lack of experience.

Another argument for a peremptory instruction is that the defendant was not guilty of negligence in failing to warn the plaintiff of the danger of flying chips. Complaint is also made of the instruction which the court gave to the jury, that the defendant owed the plaintiff the duty to exercise ordinary care in warning him of the danger connected with his work and to give

reasonable warning of such danger. Contrary to this, the defendant requested an instruction as follows:

"The court instructs the jury that the defendant was not bound to notify or warn the plaintiff of danger that the plaintiff could discover by the exercise of ordinary care on his part."

This instruction was refused, and complaint is made on that account. The plaintiff testified that he did not know of the danger, and that this was his first day at that kind of work. Some of the evidence tends to show that the defendant knew of the danger and did not tell the plaintiff, nor instruct him concerning it, and that the danger was not apparent or obvious. It was the duty of the defendant to warn and instruct the plaintiff as to the defects in the tool with which he was working, and the danger connected with the work, of which the defendant knew, or ought, in the exercise of reasonable care and diligence, to know, and of which the plaintiff had no knowledge, actual or constructive. (*Mirick v. Morton,* 62 Kan. 870, 64 Pac. 609; *Brower v. Timreck,* 66 Kan. 770, 71 Pac. 581; *Mather v. Rillston,* 156 U. S. 391, 39 L. Ed. 464, 470; 26 Cyc. 1165.) Whether or not the defendant was guilty of negligence in this particular was a question properly submitted to the jury.

(2) The defendant complains of the refusal of the court to give requested instruction No. 13, as follows:

"The court instructs the jury that there is no claim on the part of the plaintiff that the defendant was using an improper method for doing the work in question, and you can not find against the defendant on that ground."

The defendant argues that this instruction was requested because the trial court admitted evidence from witness Mayfield that he had requested that an air gun (air hammer) be obtained. With this should be placed another complaint of the defendant—that of the admission of evidence to show an injury to witness Mayfield two or three hours previous to the injury to the

plaintiff.   It appears that Mayfield, while working with
the chisel, was struck on the head with the hammer by
Biggerstaff, and was compelled to quit work.   For how
long does not appear.   We are unable to see wherein
the refusal of this instruction or the admission of this
evidence prejudiced the substantial rights of the de-
fendant.

(3) The defendant contends that it was error to
submit to the jury the question as to whether or not the
defendant was negligent in failing to furnish the plain-
tiff a reasonably safe diamond-point (chisel) with
which to work.   This was alleged in the petition, and
evidence was introduced tending to prove that allega-
tion.   The plaintiff was injured while he and his fellow
workmen were working with that tool.   Under section
46 of chapter 218 of the Laws of 1911, the defense of
assumption of risk was not available to the defendant.
The verdict was a general verdict.   There were no
special findings.   Under the evidence the jury were
warranted in finding that the chisel was defective, and
that the defect was the cause of the plaintiff's injury.
The question was properly submitted to the jury.   Cases
similar to this, where injuries to eyes have been caused
by flying pieces of steel, have heretofore been before
this court.   In *Railway Co. v. Weikal*, 73 Kan. 763, 84
Pac. 720, and *Gillaspie v. Iron-works, Co.*, 76 Kan. 70,
90 Pac. 760, the injured parties failed to recover, be-
cause they assumed the risks of their employment as to
such injuries.   There they knew, or ought to have
known, of the danger.   In *Railway Co. v. Quinlan*, 77
Kan. 126, 93 Pac. 632, it was held:

"(1) The defendant was guilty of actionable negli-
gence.   (2) No duty rested upon the plaintiff to in-
spect the helper's sledge or to observe its defective con-
dition.   He could assume the defendant had performed
its duty and had furnished the helper a proper tool.
(3) The failure on the part of the plaintiff to observe
the sledge did not constitute contributory negligence.
He could be negligent only in case he saw the sledge or

under the circumstances must have seen it. (4) The plaintiff and the helper were not fellow servants. (5) The plaintiff did not assume the risk of injury from the sledge. (6) The question whether the plaintiff saw the sledge or under the circumstances must have seen it was for the jury to determine." (Syl. See, also, *Steele v. Railway Co.*, 87 Kan. 431, 124 Pac. 169; and *Brooks v. Manufacturing Co.*, 94 Kan. 86, 145 Pac. 840.) In the last three cases cited, the plaintiffs recovered. The judgment in the case at bar is in harmony with these cases.

(4) Another complaint is, that the workmen's compensation act (Laws 1911, ch. 218, § 46) is unconstitutional, in that it gives the defenses of contributory negligence and assumption of risk to an employer who has elected to come within the provisions of the act, and denies them to an employer who does not elect to come within its provisions. In *Shade v. Cement Co.*, 93 Kan. 257, 144 Pac. 249, this court said:

"Chapter 218 of the Laws of 1911, as amended by chapter 216 of the Laws of 1913, does not violate section 18 of the bill of rights guaranteeing remedies by due course of law, nor section 16 of article 2 of the constitution which provides that no bill shall contain more than one subject, nor the provisions of the 14th amendment to the federal constitution relating to due process and equal protection of the laws." (Syl.)

The defendant had employed more than fifteen men continuously for more than one month previous to the accident, and had not elected to come within the provisions of chapter 218 of the Laws of 1911.

The precise question here presented has not been before this court. It was before the supreme court of Wisconsin in *Borgnis v. Falk Co.*, 147 Wis. 327, 351-355, 133 N. W. 209, 37 L. R. A., n. s., 489, 498-500, where that court said:

"In the Workmen's Compensation Act (ch. 50, Laws of 1911; secs. 2394-1 to 2394-32, Stats.), providing a comprehensive scheme by which accidental injuries to employees are to be compensated for by the employers

according to certain definite rules to be administered by an Industrial Commission, a provision abrogating the defenses of assumption of risk and negligence of fellow-servants as to those employers who do not elect to come under the law, but preserving such defenses intact to those who do so elect, does not involve any invalid classification." (Syl. ¶ 9.)

In *Ives v. South Buffalo Ry. Co.,* 201 N. Y. 271, 94 N. E. 431, 34 L. R. A., n. s., 162, it was held that the legislature may abolish the fellow-servant rule and the law of contributory negligence, as they apply to the question of liability of a master for injury to his servant. The constitutionality of this statute was upheld in *Gorrell v. Battelle,* 93 Kan. 370, 144 Pac. 244. We do not see how this provision of the law in any way violates any part of the constitution of the state of Kansas or of the United States. It is a matter clearly within the province of the legislature. Industrial conditions have become such that legislation upon this subject is an imperative necessity. No constitutional provision prohibits it.

This court can not say there was no evidence of negligence on the part of the defendant. That question was properly submitted to the jury. The findings of the jury are conclusive. No substantial error in the admission of evidence or in the instructions of the trial court has been shown. Upon the whole record, it appears that substantial justice has been done. The judgment is affirmed.