THE CHEROKEE & PITTSBURG COAL AND MINING
COMPANY v. JOHN DICKSON.

*No. 441.*   *(61 Pac. 450.)*

1. NEGLIGENCE—*Fellow Servants — Selection of Employee.* An
   employer is bound to exercise reasonable care in selecting and in
   retaining employees competent to carry on the work in which they
   are engaged; and proof that a coal mining company's pit boss,
   who had charge of the operation of its mine, had ample time and
   opportunity to learn of the incompetency of a certain miner
   therein employed tends to sustain the allegation that the defend-
   ant company had knowledge of the incompetency of such em-
   ployee.

2. EVIDENCE—*Hypothetical Questions—Facts.* Refusing to per-
   mit a witness to answer a hypothetical question which assumes
   the existence of a material fact not in evidence, *held,* not error.

3. ——— *Special Findings—Apparent Inconsistency.* A cer-
   tain special finding apparently contrary to the evidence examined,
   and *held* not to be in actual conflict therewith.

Error from Cherokee district court; W. L. SIMONS,
judge.   Opinion filed June 13, 1900.   Affirmed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plain-
tiff in error.

*Morris Cliggitt,* for defendant in error.

The opinion of the court was delivered by

MILTON, J. :   This action was commenced in the dis-
trict court of Crawford county by John Dickson against
the Cherokee & Pittsburg Coal and Mining Company to
recover damages on account of an injury received in
a mine belonging to the company at Frontenac, Kan.,
while he was in its employ as a miner.   The plain-
tiff's hands and face were severely burned by reason
of a shot breaking through the "rib" separating a
"room" then being worked by a miner named Gus-
tave Dufresne from the passage called the "smoke en-

try." The shot was fired at about half-past twelve o'clock P. M. on September 19, 1898. The custom was to begin firing at fifteen minutes before twelve o'clock noon, and the shots would all be fired by noon. Dickson and two others had eaten their lunch in the main entry near the bottom of the hoisting shaft, and Dickson had just started to go to his tool-box, at the farther end of the smoke entry, when Dufresne fired the shot which caused the injury. It broke through the rib into the smoke entry and Dickson was knocked down and burned by reason of the explosion. The negligence alleged by the petition was that Dufresne was unskilful and incompetent, and that the defendant company, with knowledge of the unskilfulness and incompetency of Dufresne, negligently retained him as an employee, and that the pit boss, Elwood, negligently failed to discover that Dufresne, by reason of his unskilfulness and incompetency, had reduced the rib below the safety point in thickness.

Verdict and judgment were for the plaintiff below in the sum of $2000.

The plaintiff in error contends that the court erred in overruling the demurrer to the evidence of the plaintiff below ; in refusing to instruct the jury to return a verdict in favor of the coal company ; in admitting incompetent, irrelevant and improper testimony on behalf of the plaintiff ; in refusing to admit competent, material and proper testimony of the defendant ; in overruling the defendant's motion for a new trial ; and in rendering judgment in favor of the plaintiff and against the defendant.

The two material questions for consideration in this court are : First, is there any evidence from which the jury could infer that the plaintiff was incompetent and unskilful ? Second, if so, is there any evi-

dence that the defendant knew, or by the exercise of ordinary care might have known, that Dufresne was incompetent and unskilful?

The first error assigned challenges the whole of the plaintiff's evidence. The rule is well established in this state that, before a demurrer to evidence can be sustained, the court must be able to say that, admitting and giving due weight to every fact therein which is favorable to the plaintiff, and every inference the jury might fairly and legally draw from the evidence in favor of the plaintiff, still the plaintiff has utterly failed to prove some one or more of the material facts of his case. (*Brown v. A. T. & S. F. Rld. Co.*, 31 Kan. 1, 1 Pac. 605 ; *Wolf v. Washer*, 32 id. 533, 4 Pac. 1036 ; *Christie v. Barnes*, 33 id. 317, 6 Pac. 599 ; *City of Syracuse v. Reed*, 46 id. 520, 26 Pac. 1043.)

The question of the incompetency and want of skill of Dufresne was for the jury. A master is bound to exercise reasonable care in selecting and retaining servants competent to carry on the business in which they are employed. (7 A. & E. Encycl. of L. 870.) In *Railroad Co. v. Doyle*, 18 Kan. 58, which was an action by an employee against his employer for injuries caused by the negligence of a fellow servant, it was held that an allegation that the employer knew of the latter's unfitness and recklessness was sustained by proof showing that such incompetency ought to have been known by the defendant. It was the duty of the pit boss, Elwood, to exercise constant supervision over the miners, and to see that the work was properly done. There was no fixed rule as to when the shots were to be fired, but the custom upon which the miners generally relied had been established, and the shot fired by Dufresne was at a time not in accordance with such custom. The rib should have been kept at a

thickness of ten feet; it was actually reduced in thickness by Dufresne to about three feet. A room should have been about twenty feet in width; Dufresne's room was between thirty and forty feet wide. Drill holes for shots should have been made parallel with or at an angle from the rib; Dufresne drilled into the rib at times. The side of the wall next to the rib should have been kept reasonably smooth and uniform; the side of Dufresne's room next the rib was exceedingly irregular. These facts were open to the observation of Elwood, and he had ample time and opportunity to learn of them. Other facts might be cited tending to show Dufresne's unskilfulness and incompetency as a miner, but the foregoing are sufficient to show that the court properly overruled the demurrer to the plaintiff's evidence.

For the same reason the requested instruction for a verdict in favor of the defendant was properly overruled. The testimony admitted over the objection of the defendant, and here complained of, was that of the plaintiff himself and of one Arthur Malle. It relates to the manner of mining, carrying forward a room, and putting in shots, and to a conversation between the plaintiff and the pit boss. The testimony of Dickson concerning the making of a break-through, whether competent or not, was material, in view of the finding by the jury that Dufresne was not making a break-through at the time the shot which injured the plaintiff was fired. His testimony as to the conversation with Elwood was clearly competent, since it tended to prove knowledge on the part of Elwood of the unskilful work being done by Dufresne. The objection that the time when the conversation occurred was not stated is met by the fact that Dufresne had been working in the mine about two and one-half

months before the injury, and Dickson about one month. Hence, the conversation occurred more than forty-five days after Dufresne had begun working in the mine and after Elwood had become acquainted with the character of his work. There is other testimony indicating that the conversation occurred some time after Dickson had begun to work. The testimony of the witness Malle was objected to for the reason that it stated the opinion and conclusion of the witness concerning a matter respecting which he was not qualified to testify. We think the objection was not well taken. The witness was an experienced miner and was testifying from personal knowledge as to the character of the work done by Dufresne in the mine. He was asked if he knew the proper way to get out the coal after the shot was fired, and, over objection, he answered that he knew, and then proceeded to state the proper process. His testimony tended to prove that Dufresne was not a skilful miner.

Counsel for plaintiff in error contend that the court erred in refusing to admit certain testimony of its witness Joseph Wilson. The witness, having answered that he could tell from examining the amount of powder used and the amount of merchantable coal produced by a miner during a considerable length of time and under ordinary conditions whether or not such miner was ordinarily skilful, was then asked the following question :

"What would you say if you were given that a man in a certain length of time used a certain amount of powder and produced therefrom a large quantity of coal, or what an average miner produces, what would you say about the skill of that person?"

The question was objected to as being incompetent, irrelevant, and immaterial, and the objection was sustained. It is clear that the objection was properly

sustained, since the question does not cover several features connected with mining which are essential to a determination of the question at issue. The witness did not know Dufresne, and had never been in Dufresne's room. Besides this, there was no testimony before the jury showing anything about the quantity of powder that Dufresne used. As a hypothetical question it was improper, since it assumed the existence of a matter material to the formation of a correct opinion about which no testimony had been given. (*Davis v. Insurance Co.*, 59 Kan. 74, 52 Pac. 67.) It was also objectionable for the reason that it called for direct testimony as to skill or lack of skill of a miner. (*Coal Co. v. Dickson*, 55 Kan. 62, 68, 39 Pac. 691.) The testimony of the witness Lawton as to the skill and competency of Dufresne, judged from the amount and condition of coal mined by the latter, was properly rejected, under the authority of the case just cited. In his testimony, which was given in a narrative form, Lawton stated positively that Dufresne was a competent, practical miner, and that he knew this from the amount and condition of the coal that he got out. The statement that Dufresne was a competent miner was entirely improper, and the reason given for the opinion stated was insufficient, since the amount and condition of the coal mined are but a part of the elements forming the basis of a judgment in respect to the competency of the miner.

Other contentions of counsel for plaintiff in error are that certain of the special findings are not sustained by the evidence.

The third, tenth and twelfth findings are based upon conflicting evidence. The fourteenth finding could not be completely answered by yes or no. The answer

given is responsive to the first part of the question and is sustained by the evidence, and in this view the last part of the question was immaterial.   From the fifteenth and sixteenth findings, it appears that the jury thought "some part" of the plaintiff's duty required him to be at the place where he received the injury as a place of safety from his own shot.   As the evidence shows that he arrived at the place where he . ate his lunch before his own shots exploded, and as it was in fact a safe place so far as his own shots were concerned, and as the plaintiff testified that one purpose for starting back was to learn what execution his shot had made, it cannot be said that the findings are without some foundation in the proven facts.   The eighth finding, which is that Dufresne had been engaged in the work as a coal-miner less than four months, is apparently contrary to the evidence.   He had in fact worked in coal-mines in Pennsylvania and in Kansas almost eleven months.   There was evidence, however, that he had worked about four months in mining bituminous coal in Kansas and that his work in the Pennsylvania mines was in anthracite coal, the processes being somewhat different in the two classes of mines.   In the Pennsylvania mines, where the veins of coal are much thicker than at Frontenac, the work was done by drilling and blasting, while at Frontenac the pick was employed.   As the witnesses seemed to regard a miner as one who used a pick in his work, and as Dufresne had been engaged in that kind of mining for only four months, this finding is not so far at variance with the evidence as to justify a reversal of the case.   We think the trial court did not err in overruling the motion for a new trial and in rendering judgment upon the verdict in favor of the plaintiff below.   The judgment is affirmed.