No. 41,900

DALE TAYLOR, *Appellee,* v. LEO H. HOSTETLER, *Appellant.*

(352 P. 2d 1042)

Opinion filed June 11, 1960.

*Ronald D. Albright,* of Anthony, argued the cause, and *Donald Muir* and *W. G. Muir,* both of Anthony, were with him on the brief for the appellant.

*Gray Dresie,* of Wichita, argued the cause, and *J. Paul Jorgensen,* of Wichita, *J. Howard Wilcox* and *Bob H. Newton,* both of Anthony, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover damages for injuries sustained by the plaintiff in a fall from a trailer while loading hay

in a field as a farm hand. The plaintiff confessed a demurrer directed against the original petition and was granted leave to file an amended petition. This appeal is from an order of the trial court overruling the defendant's motion to strike the amended petition from the files and dismiss the action with prejudice, and also from an order of the trial court overruling a demurrer to the amended petition.

The questions presented are (1) whether the theory under which recovery is sought upon the allegations in the amended petition constitutes a *fatal* departure from the theory under which recovery was sought in the original petition; and (2) whether the amended petition states sufficient facts to constitute a cause of action.

The original petition filed by the plaintiff (appellee) alleged that the defendant operates and owns a dairy farm in Harper County, Kansas, and on or about the 15th day of July, 1958, the plaintiff was employed as a farm hand on the dairy farm. The plaintiff upon the direction of the defendant (appellant) was engaged as one of a crew loading hay in the field. An eight year old boy was driving the tractor and a seventeen year old boy was handing the hay to the plaintiff who was on a trailer loading the hay on the trailer. The petition then alleged:

"2. . . . *That when the Plaintiff started working and observed the age of the boy who was operating the tractor he complained to the Defendant that the boy was too young for the responsibility of driving a tractor. The Plaintiff also complained to the Defendant that the boy was driving in a careless and reckless manner. Both of these complaints were ignored by the Defendant.* At or about 3:30 P. M., in the afternoon of July 15, 1958, while the Plaintiff was on top of the trailer loading hay and while the trailer was being pulled by a tractor driven as aforesaid by the eight-year old boy, the eight-year old boy drove the tractor in a negligent and reckless manner over a hole in the field. That one of the wheels of the trailer on which the Plaintiff was working, fell into the hole aforesaid. That as a result thereof the trailer gave a violent lurch hurling the Plaintiff to the ground. That the Plaintiff fell upon his right foot, leg and knee and immediately experienced extreme pain as a result of such fall.

"3. That one or more of the acts of negligence of the Defendant which were the proximate cause of the injuries to Plaintiff were as follows:

"A. In allowing and furnishing an eight-year old boy to drive a tractor pulling the trailer upon which the Plaintiff was working.

"B. In refusing to replace the eight-year old boy with one of more mature judgment and experience upon the complaint of the Defendant as aforesaid.

"4. That at the time of the accident aforesaid the eight-year old boy who was driving such tractor was acting as the agent, servant, and employee of

the Defendant. That the said eight-year old boy was negligent in the following particulars, to-wit:

"(1) In driving the said tractor over and upon the hole which caused the accident.

"(2) In not keeping a careful watch as to the terrain over which he was driving such tractor.

"(3) In failing to exercise due care and diligence in order that such trailer might be prevented from any sudden and unexpected moves which might cause persons working upon such trailer to be thrown to the ground and injured." (Emphasis added.)

Further allegations in the petition relating to the injuries of the plaintiff and the relief sought are immaterial to this appeal.

In the amended petition the plaintiff substituted the following for the italicized portion of the petition above set forth:

". . . That the said trailer was being pulled by the tractor. That the Defendant was familiar with the eight-year old boy who was driving the tractor and the Plaintiff was not. That the Plaintiff asked the Defendant if the tractor driver was old enough and the Defendant assured the Plaintiff he was and there was no danger. That the Plaintiff told the Defendant he thought the boy was driving too fast and the Defendant assured the Plaintiff again that there was no danger. That the Plaintiff was not familiar with the type of work and did not realize that there was actual danger and that the assurances of the Defendant that there was no danger allayed any fears which he might have had. That the Plaintiff relied upon the assurances made by the Defendant. That the Defendant knew or should have known, being familiar with the eight-year old driver, the equipment, and the type of work, that there was actual danger. That in spite of such knowledge the Defendant made such assurances to the Plaintiff. That the Plaintiff having no real knowledge or experience in regard to the ability of the eight-year old driver, the equipment, and the type of work, had no reason, as a reasonably prudent man, not to rely upon the assurances made by the Defendant as aforesaid . . ."

The only other change made in the amended petition concerning this appeal is the allegations of negligence relating to defendant in paragraph 3. These changed allegations read:

"a. In failing to furnish a competent and experienced driver for the tractor which was pulling the trailer upon which the Plaintiff was working.

"b. In assuring the Plaintiff that the eight-year old boy was competent and that there was no danger in having a lad of such tender years as a driver of the tractor under the circumstances as aforesaid."

Should the appellant's motion to strike and dismiss the amended petition with prejudice have been sustained?

The appellant contends that insofar as the changes made in the amended petition were contradictory to the allegations in the

original petition, and not explanatory thereof, they constituted a departure. It is argued the plaintiff cannot be permitted to allege one set of facts and, finding it to be demurrable, contradict those facts which he originally alleged, to manufacture a new cause of action. It is argued the plaintiff originally alleged that he observed the farm boy was too young to drive a tractor and that he drove it negligently, and that the defendant ignored his complaints; that the amended petition attempts to manufacture a completely different cause of action by setting up lack of judgment on the part of the plaintiff, and complete reliance upon voluminous assurance from the defendant, who had, in the petition, ignored the plaintiff's complaints.

Broadly speaking, under the fellow-servant doctrine fellow servants assume the risk of injuries from each other in their common conduct of the master's work. The duty is imposed upon the master, however, to exercise reasonable care in the selection of his servants and to furnish them with a reasonably safe place in which to work and reasonably safe materials, tools and appliances with which to work. (*Bridge Co. v. Miller*, 71 Kan. 13, 80 Pac. 18.)

The appellant contends, the demurrer to the petition having been sustained by reason of the assumption of risk and fellow-servant doctrine, the plaintiff by his amended petition attempts to plead a liability on the part of the defendant based upon his assurance and failure to provide safe co-employees and this, it is argued, constitutes a fatal departure. We fail to see merit in the appellant's argument.

A departure was defined in *Armstrong v. Lough*, 128 Kan. 167, 277 Pac. 51, by quoting Phillips on Code Pleading, § 273, as follows:

" 'Departure in pleading is the dereliction of an antecedent ground of complaint, or of defense, for another that does not fortify the former. This is forbidden, because if the parties were allowed at pleasure to abandon the ground of complaint or defense first asserted and to resort to another, the pleadings would be prolonged, the formation of an issue delayed, and the foundation of the action, or of the defense, might be entirely changed. At common law departure may take place in any pleading subsequent to the plea; in code pleading it can occur only in the reply.' " (p. 171.)

In the *Armstrong* opinion the court recognized that ordinarily a question of departure arises in a plaintiff's pleadings only when there is a seeming inconsistency between the petition and reply, but the really important fault of departure arises when there is a palpable inconsistency between the earlier and later pleadings of a litigant which prevents his adversary from squarely joining issues with him

on material matters, and which, if countenanced by the court, would substantially change the action or defense from what it had been at its inception.

The provisions of G. S. 1949, 60-759, upon which the appellant relies, grant authority to the court to allow amendments either before or after judgment to various matters, including pleadings, upon the condition that the amendment must be "in furtherance of justice" and "when such amendment does not change substantially the claim or defense."

The foregoing is substantially the second syllabus in *Uhl v. Phillips Petroleum Co.*, 164 Kan. 401, 190 P. 2d 349. In that case a common law negligence action for damages was tried to a jury upon several grounds of negligence alleged in the petition. The jury in answer to special questions found, as the only ground of negligence, one that was not alleged or claimed in the petition. The plaintiff filed a motion for leave to amend the petition to allege the ground of negligence found by the jury. The trial court granted the plaintiff leave to amend and entered judgment on the general verdict. On appeal this judgment was reversed with directions to grant the defendant's motion for judgment on the answers to the special questions notwithstanding the general verdict on the ground that our statute, 60-759, *supra*, did not authorize the court to allow the amendment to the petition which the plaintiff requested after verdict. It was said the amendment must be "in furtherance of justice" and the amendments which plaintiff asked to have made changed materially the claims of the plaintiff and presented issues of liability of the defendant which had not been tried. Clearly this case does not support the appellant.

None of the other cases upon which the appellant relies concerning departure applies to the facts presently before the court. In *Bonesteel v. White*, 127 Kan. 843, 275 Pac. 163, and in *Kolich v. Travelers Ins. Co.*, 154 Kan. 458, 119 P. 2d 498, the inconsistencies complained of as a departure from the petition were in the reply and not in an amended petition These cases merely hold that two inconsistent pleadings filed by the same party in the same action cannot be allowed to exist simultaneously. In the instant case the situation is quite different. The amended petition takes the place of the original petition.

In *Jewett v. Malott*, 60 Kan. 509, 57 Pac. 100, an action was brought on a promissory note. The defense alleged the petition

contained no allegation of demand for payment or notice of non-payment and protest, and no reason or excuse why payment was not demanded and protest made. Judgment was recovered and appeal was taken to the court of appeals which held the defense good on the ground the petition did not state facts sufficient to constitute a cause of action. When the case was remanded to the district court the plaintiff filed an amended petition alleging that a cause of action upon a trust arose in favor of the plaintiff and against the defendants. A motion to strike the amended petition from the files was sustained. On appeal the Supreme Court sustained the trial court saying:

". . . While the courts are and should be liberal in permitting parties to amend their pleadings, they are not warranted in allowing amendments which substantially change the claim or defense previously relied on. (Gen. Stat. 1897, ch. 95, § 139; Gen. Stat. 1889, ¶ 4222.) . . ." (p. 510.)

The court went on, however, to say in its concluding paragraph:

"The court is vested with considerable discretion in the matter of allowing amendments, and its ruling in granting or refusing leave to amend will not be disturbed unless there appears to have been a palpable abuse of discretion under all the circumstances. In view of the change in the form and character of the action by the proposed amendment and of the time and circumstances under which it was made, we think the court was justified in its ruling, and the same is hereby affirmed." (p. 511.)

The foregoing case cited by the appellant is the only case which approaches support for his position. However, the action pending in that case on the original petition was in the court's bosom for a considerable period of time and was tried on the original petition to which an answer was filed. There the trial court in the exercise of its discretion denied the amendment, while in the instant case the trial court in the exercise of its discretion permitted the amended petition to stand.

Under G. S. 1949, 60-761, pleadings may be amended when a demurrer is sustained as follows:

"If the demurrer be sustained, the adverse party may amend, if the defect can be remedied by way of amendment, with or without costs, as the court or judge in its discretion shall direct."

In the instant case the plaintiff confessed the demurrer and was granted fifteen days in which to file an amended petition. The only reason for such an order was to permit the plaintiff to allege in his petition additional facts to state a cause of action against the defendant.

There can be no doubt under our practice, except in cases where the statute of limitations has run in the meantime (See, *Springer v. Roberts,* 151 Kan. 971, 101 P. 2d 908; and *Dalton v. Hill,* 169 Kan. 388, 219 P. 2d 710), a question not here involved, that a plaintiff who failed to state a cause of action in his petition and has had a demurrer sustained thereto based upon such ground may file an amended petition so long as such pleading contains additional, substantial, material facts which would affect the result as against a demurrer. (*Fidelity Hail Ins. Co. v. Anderson,* 172 Kan. 253, 239 P. 2d 830.) The following statement is made in 41 Am. Jur., Pleading, § 303, p. 499:

"The liberal policy of permitting amendments in furtherance of justice is exercised by the courts even though a demurrer has been interposed because of failure of the declaration or complaint to state a cause of action. The most common kinds of amendments, it has been said, are those in which complaints are amended that do not state facts sufficient to constitute a cause of action . . ."

In the early case of *Culp v. Steere,* 47 Kan. 746, 28 Pac. 987, the plaintiff filed a petition sounding in tort and on the trial of the case, after the evidence had been introduced and just prior to argument of the case to the jury, the plaintiff requested and the trial court granted him leave to amend the petition. The amendment wholly changed the plaintiff's cause of action from one of tort, founded upon fraud and deceit, to one on contract, founded upon an alleged breach of warranty. The jury was discharged by the trial court and the case tried at the next term on the amended petition and answer thereto. In the opinion the court said:

". . . The provisions of our statute authorizing amendments are very broad, liberal, and comprehensive. (Civil Code, § 139.) About the only limitations upon making amendments are, that they shall be made only 'in furtherance of justice, and on such terms as may be proper;' and if of pleadings, that the amendments shall 'not change substantially the claim or defense.' The amendment in the present case cannot be said, by the defendant below, not to be in furtherance of justice and on proper terms, for the court below, as a condition to making the amendment, imposed upon the plaintiffs substantially all the costs made in the case up to the time of making the amendment; and we do not think that the amendment changed substantially the plaintiffs' claim. *The statute does not provide that the amendment shall not change the form of the action or cause of action, but it simply provides that the amendment shall not 'change substantially the claim or defense.'* . . . In Ohio it has been held that the restriction upon amendments contained in their code, that *the proposed amendment 'must not change substantially the claim or defense,' does not refer to the form of the remedy but to the general*

*identity of the transaction forming the cause of the complaint.* (*Spice v. Steinruck,* 14 Ohio St. 213.) Also, as the amendment was permissible and was in fact made, and as the plaintiffs' action was commenced within much less than three years and perhaps less than two years after the original cause of action accrued, there is no room for claiming that the cause of action upon which the plaintiffs recovered was barred at the time by the operation of any statute of limitations." (pp. 750, 751, 752.) (Emphasis added.)

In the case at bar the general form of the transaction giving rise to the cause of complaint was not changed by the amended petition. The plaintiff was still seeking damages for injuries sustained in falling from the trailer while loading baled hay.

It cannot be said that the filing of an amended petition before an answer is filed will be unfair to the defendant or prevent him in any manner from answering or defending any issues raised by the amended petition. If a petition does not state a cause of action it has been the practice of the courts to allow such pleadings to be amended to state a cause of action. To rule otherwise would be to deprive the plaintiff of his right to recover on a pure technicality without taking into consideration the merit of his claim as stated in the amended petition, or as it actually exists even though not thoroughly or properly pleaded in the original petition.

Does the amended petition state sufficient facts to constitute a cause of action?

For the master to claim exemption from liabilities for injuries to a servant on the ground that the negligent act was that of a fellow servant, the master must have exercised reasonable care to prevent the injury. The risk that the master may be negligent in performing his duty is not one that the servant assumes.

A duty rests upon the master not to expose the servant, in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care. These duties are: (1) To provide safe and suitable machinery and appliances for the business, including a safe place to work. This includes the exercise of reasonable care in furnishing such appliances, and the exercise of like care in keeping the same in repair and in making proper inspections and tests. (2) To exercise like care in providing and retaining sufficient and suitable servants for the business, and instructing those who, from newness or age, evidently need it. (3) To establish proper rules and regulations for the service, and, having adopted such, to conform to them. (*Schwarzschild v. Weeks,* 72 Kan. 190, 83 Pac. 406.)

The rule, on the assumption of risk under the fellow-servant doctrine, quoted in *Bridge Co. v. Miller,* supra, was stated by Mr. Justice Valentine in *A. T. & S. F. Rld. Co. v. Moore,* 29 Kan. 632, in the following luminous way:

". . . In all cases, at common law, a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow-servants to work with him; and when the master has properly discharged these duties, *then, at common law, the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow-servants and coëmployés* . . ." (p. 644.) (Emphasis added.)

Upon the authorities in this jurisdiction the servant, in the contract of employment, assumes all the ordinary risks of the employment. In the exercise of ordinary care he must foresee that the negligence of those with whom he works may result in injury to him. Danger from that source is one of the ordinary incidents of the service, and so far as it fairly may be anticipated it is assumed. (*Bridge Co. v. Miller,* supra, and authorities cited therein.)

In an action by a servant against the master for negligence, where the negligent act is in violation of a positive duty which the master owes to the servant, that becomes the controlling fact in determining the master's liability; and where the negligence of the master is the proximate cause of the injury the master will be held liable, notwithstanding the negligence of the master may have been set in operation by the act of one who otherwise might be held to be a fellow servant. In such situation the fellow-servant doctrine is not involved. (*Schwarzschild v. Weeks,* supra.)

As early as 1875 it was said in *K. P. Rly. Co. v. Salmon,* 14 Kan. 512, that an employer was bound to exercise reasonable care and diligence in selecting and retaining employees competent to carry on the work in which they are engaged. This rule was confirmed in *Mining Co. v. Dickson,* 10 Kan. App. 391, 61 Pac. 450; and *Hovis v. Refining Co.,* 95 Kan. 505, 148 Pac. 626.

The appellant argues there is no allegation that the eight year old boy was not competent for the work assigned to him, but that the amended petition merely alleges he "carelessly and negligently drove over a hole in the field."

Under the circumstances here presented the amended petition is entitled to a liberal construction and in paragraph 4, subparagraph (2), it is alleged the eight year old boy was negligent in not keeping a careful watch as to the terrain over which he was driving such tractor. This allegation in and of itself is sufficient to withstand a demurrer concerning pleaded negligence on the part of the tractor driver and it implies incompetence of the tractor driver.

The appellant relies on the following language in *Bridge Co. v. Miller,* supra, wherein the court said:

". . . Each one of such servants must know that his relations with the others may endanger his safety. They are all coservants and each one takes the risk of breaches of duty on the part of the others likely to do him harm. This is true whether or not he may be able to become acquainted with all his fellows; whether or not he may be able to observe their conduct; whether or not he may be able to take precautions against their carelessness; whether or not he may be able to influence them in the formation of habits of foresight and care . . ." (p. 41.)

On the surface this language, and Syllabi 3 and 4 of the case, would seem to suggest an absolute assumption of risk by one fellow servant for injury to himself caused by the negligent act of another in their common conduct of the master's work. But this language must be viewed in perspective with other language in the opinion and with other cases decided both before and after this decision. The quoted language is subject to the rules relating to the assumption of risk under the fellow-servant doctrine as heretofore stated.

At this point in our discussion we conclude the amended petition, construed as on demurrer, alleges negligence on the part of the defendant employer, and the fellow-servant doctrine is not involved. This should not be confused with our further consideration of the assumption of risk doctrine and contributory negligence, if any, alleged in the amended petition.

A serious question is presented by the appellant's argument that the plaintiff, the only adult on the team, had adequate opportunity to observe the lad, and cannot be said to have been excused from the assumption of the risk doctrine by assurances.

The proposition of law upon which the appellant relies is that if the plaintiff in his petition alleges, in addition to the facts constituting his cause of action, other material and relevant facts which are a defense to the cause of action stated, he must also allege facts avoiding the defense, else his pleading nullifies itself and will not withstand a demurrer. (41 Am. Jur., Pleading, § 88.)

The appellant goes beyond the allegations of the amended petition to state the plaintiff, being with the lad all day, was in a position to know whether the lad was skilled or not. He argues the plaintiff had a better opportunity than the defendant to observe the tractor driver. Nowhere does it appear in the amended petition how long the plaintiff worked with the eight year old boy before the injury occurred, and in construing the amended petition on demurrer we cannot reach out to consider additional facts. This question must await the evidence and is for the jury to determine.

It is argued by the appellant that if the conduct of the eight year old boy concerning which complaint was made were unsatisfactory to the plaintiff, he could have quit as suggested in *Farwell v. Boston and Worcester Rail Road Corporation,* 45 Mass. 49.

It is said in 35 Am. Jur., Master and Servant, § 347:

"To entitle an employee to recover for injuries which are shown to have been due to the incompetence of a coemployee, it must be made to appear not only that the fact of incompetence was known to the employer, but also that such fact was unknown to the injured employee. An employee who knows of the incompetency of a fellow employee—or has the same means of knowledge thereof as the employer—and continues in the service without objection cannot base a right of recovery against his employer on injuries incurred as a result of incompetency on the part of his fellow employee. He is held to have assumed the risk of injury.

"Knowledge may be imputed from opportunities to observe the conduct of the fellow employee or from the fact that the latter had a general reputation for incompetence . . ." (pp. 774, 775.)

The foregoing rule finds support in Kansas authorities where an employee seeks to recover from an employer for injury by reason of the employer's negligence. In *Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253, it was said:

". . . But, reduced to its last analysis, the doctrine of assumed risk must rest for its support upon the express or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for resulting injury. To raise an implied agreement the risk assumed must be known to the employee, or it must be of such nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. It can never be said that one has agreed to assume responsibility for that of which he had no knowledge, or of the existence of which he is not chargeable with notice." (p. 88.)

The foregoing language was quoted with approval and applied in *Parker v. City of Wichita,* 150 Kan. 249, 92 P. 2d 86.

It has been said that one who, knowing all the danger and peril of pursuing a given course and being under no compulsion to

encounter the same, freely and voluntarily continues therein, cannot recover damages for injuries he may suffer. (*Sweet v. Railroad Co.,* 65 Kan. 812, 70 Pac. 883; and *Cooper v. Southwestern Bell Telephone Co.,* 159 Kan. 67, 151 P. 2d 692.)

The doctrine of assumed risk must not be confused with contributory negligence. In commenting upon the doctrine of assumed risk in *Kleppe v. Prawl,* 181 Kan. 590, 313 P. 2d 227, 63 A. L. R. 2d 175, the court paraphrased from 65 C. J. S., Negligence, § 117, pp. 709 to 711; and 38 Am. Jur., Negligence, § 172, p. 847, as follows:

"While assumption of risk is somewhat akin to contributory negligence, these two doctrines of law are not synonymous because *assumption of risk arises through implied contract of assuming the risk of a known danger;* the essence of it is venturousness; *it implies intentional exposure to a known danger; it embraces a mental state of willingness;* it pertains to the preliminary conduct of getting into a dangerous employment or relation; it means voluntarily incurring the risk of an accident, which may not occur, and which the person assuming the risk may be careful to avoid; it defeats recovery because it is a previous abandonment of the right to complain if an accident occurs. Contributory negligence arises out of a tort; the essence of it is carelessness; it may or may not imply intentional exposure to a known danger; it is a matter of conduct; a contributorily negligent act leads more immediately to a specific accident. Another difference is that assumption of risk denies defendant's negligence while contributory negligence admits defendant's negligence but denies it is the proximate cause of the accident . . ." (p. 594.) (Emphasis added.)

By the allegations of the amended petition the plaintiff asked the defendant if the tractor driver was old enough and the defendant assured the plaintiff he was and there was no danger. Also, the plaintiff told the defendant he thought the boy was driving too fast and the defendant assured the plaintiff again there was no danger. A similar situation was presented in *Fletcher v. Mercantile Co.,* 105 Kan. 425, 185 Pac. 7. There an employee working in the cold storage department of a grocery store, detected what he believed to be the odor of natural gas in one of the storage rooms a few weeks before an explosion and notified the employer-defendant. The employer assured the employee that the odor was not natural gas, stating that it was impossible for there to be gas in the building since the gas was shut off in the alley when the building was erected. The employee was injured in an explosion which followed, and he brought an action against the employer. In the opinion it was stated:

". . . Here, the servant was induced to remain in the master's employment through the master's positive assurance, which the servant believed and relied upon, that no danger existed. He cannot be charged, as a matter of law, with either contributory negligence or with having assumed the risk,

merely because, before notifying the master, he had entertained fears as to the possibility of injury by circumstances coming to his own knowledge, where he afterwards relies upon the assurance of the master that such work may be performed in safety, unless, of course, the danger was so obvious that no man of ordinary prudence would incur it  .  .  ." (p. 429.)

Another case in which an employee was assured by the employer that there was no danger is *Taylor v. Sand and Rock Co.*, 90 Kan. 452, 135 Pac. 576, and the question of constructive as well as actual knowledge on the part of the employee of the danger was said to be a question for the jury.

We fail to see why the rule announced in *Fletcher v. Mercantile Co.*, supra, should not be applied to the action presently before the court. The amended petition alleged the plaintiff was not familiar with the eight year old driver or his ability, and further that the plaintiff was not familiar with the type of work involved. Without such familiarity it was impossible for the plaintiff to have appreciated the danger. Any fears which the plaintiff had concerning the driver of the tractor, construing the amended petition as on demurrer, were allayed by the defendant's assurances upon which the plaintiff relied.

This appeal is limited solely to the sufficiency of plaintiff's amended petition as against a demurrer. The issues between the parties have not been joined and plaintiff has had no opportunity to present his evidence to sustain his case. It appears from the argument contained in defendant's brief that he is seeking to enlarge the scope of our review by having us prejudge matters dependent upon evidence and not alleged in the amended petition which might or might not become material in determining the controversy. This we cannot do. The extent of our power in the instant case is to determine whether a cause of action has been stated in the amended petition.

In conclusion we hold the amended petition states a good cause of action and the judgment of the lower court is affirmed.